## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK SWENIE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-cv-1010 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| VILLAGE OF MAYWOOD, VILLAGE OF | ) | |
| MAYWOOD DEPARTMENT OF | ) | |
| ADMINISTRATIVE HEARINGS, | ) | |
| MAYWOOD ORDINANCE ENFORCEMENT | ) | |
| DEPARTMENT, MAYWOOD DEPARTMENT | ) | |
| OF COMMUNITY DEVELOPMENT, | ) | |
| HEARING OFFICER PAMELA HARRIS, | ) | |
| MAYWOOD CHIEF OF POLICE VALDIMIR | ) | |
| TALLEY, POLICE COMMANDER | ) | |
| THEODORE YANCY, and POLICE | ) | |
| SERGEANT DARYL FAIRLY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed herein, Plaintiff's Motion to Compel [56] is granted. The Court sets the new fact discovery deadline in this case of February 9, 2018. Status hearing set for 2/14/2018 at 9:30 a.m. remains.

## I. Factual and Procedural Background

Plaintiff Patrick Swenie ("Plaintiff") alleges that while he was standing on a public sidewalk outside the Village of Maywood police station, Defendant Chief of Police Valdimir Talley ("Talley") demanded that Plaintiff produce identification without any reasonable suspicion that Plaintiff was engaged in illegal conduct. (Dkt. 1 at ¶¶ 13-14.) Talley informed Plaintiff it was not legal to take pictures of the exterior of the police station and, after Plaintiff refused to show any identification, Talley and Defendant Police Commander Theodore Yancy

("Yancy") placed Plaintiff under arrest and turned him over to Defendant Sergeant Daryl Fairley ("Fairley"). (Dkt. 1 at ¶¶ 16-18.) Plaintiff then provided his identification to Fairley. (Dkt. 1 at ¶ 23.) After he provided his identification, Plaintiff was informed that he violated Maywood Municipal Ordinance § 130.20(A)(5), which defines disorderly conduct as "[r]esisting or obstructing the performance of one known to be a police officer . . . ." (Dkt. 1 at ¶ 25.) An administrative hearing was scheduled for October 7, 2016, but was continued because Talley was unable to appear at the hearing. (Dkt. 60 at ¶ 3.) The hearing eventually took place on January 6, 2017; immediately before the hearing commenced, Plaintiff also was also charged with a violation of Maywood Municipal Ordinance § 130.20(A)(1), which forbids "making, aiding or assisting in making any improper noise, riot, disturbance, breach of peace or diversion tending to be a breach of the peace." (Dkt. 1 at ¶ 27-28.) Ultimately, Plaintiff was acquitted of the second charge, but convicted of the first after an administrative hearing during which he represented himself.

Plaintiff alleges that his initial seizure by the police lacked reasonable suspicion and his custodial arrest was not supported by probable cause under the Fourth and Fourteenth Amendments (Counts I and II); that his prosecution was malicious under state law (Count III); and that the administrative decision convicting him of resisting or obstructing a police officer should be overturned as invalid under Illinois law and the United States Constitution (Count IV).

The parties have engaged in some discovery, including the depositions of Talley and Fairley.[1] During Fairley's deposition, Fairley was asked about communications between Fairley and the prosecutor in an attempt to discover information relating to the "circumstances that led to [Fairley] writing a second citation" against Plaintiff. (Dkt. 56 at ¶ 14.) Fairley's counsel,

---

[1] At the time the motion was filed, Talley's deposition had not taken place. However, the issues that prompted the motion to compel during Fairley's deposition (*i.e.*, refusing to answer certain questions on the basis of the attorney-client privilege) apply with equal force to Talley.

Carmen Forte, advised him not to answer questions about such communications on the basis of the attorney-client privilege. The complicating factor in this case is that Mr. Forte was also the prosecuting attorney on the day of Plaintiff's administrative hearing. In other words, Mr. Forte serves a dual role – he is both the prosecutor of citations issued by Village of Maywood police officers, and "also represents the Village of Maywood and its officers in all actions where the Village of Maywood has a legal interest." (Dkt. 60 at ¶ 2.) Defendants maintain that Mr. Forte's conversation with Fairley was in his general role as an attorney for the Village of Maywood, and not in his role as a prosecuting attorney for Plaintiff's citation.[2]

As evidence, Defendants cite the fact that Mr. Forte researched Plaintiff in October 2016 after the initial hearing was continued, and discovered that Plaintiff had previously filed a suit against the City of Chicago under circumstances that are purportedly similar to the instant law suit. (Dkt. 60 at ¶ 3.) The Defendants contend that this information put Mr. Forte "notice of the potential for litigation by [Plaintiff] against the Village of Maywood, due to the similarity between the incident that involved Chicago Police officers and the incident with [Mr. Forte's] clients." (Dkt. 60 at ¶ 3.) Therefore, according to the Defendants, Mr. Forte was acting within his capacity as a Village of Maywood attorney – and not a prosecutor – when he spoke to Fairley and Talley because he "provided legal advice to Sgt. Fairley regarding the imminent lawsuit that would be filed by [Plaintiff] and communicated with Sgt. Fairley regarding the same." (Dkt. at ¶ 4.)

Plaintiff does not believe that the communications at issue are protected by the attorney-client privilege or work product doctrine, and filed the instant motion to compel seeking an order

---

[2] In the instant motion, Plaintiff also challenges whether Mr. Forte could have acted as attorney for Fairley and Talley during the relevant conversations without the consent of the Village of Maywood Manager. (*See* Dkt. 61 at 5-6.) However, because the Court finds that the evidence shows that Mr. Forte was acting in his role as a prosecutor, the Court does not reach that issue. As such, the Court proceeds in this opinion assuming, without deciding, that Mr. Forte would have had an attorney-client relationship with Talley and Forte in his role as a general attorney for the Village of Maywood.

requiring Fairley and Talley to answer deposition questions regarding the relevant communications with Mr. Forte. First, Plaintiff contends that communications between Mr. Forte and any Maywood police officers were not privileged if Mr. Forte was acting in his role as a prosecuting attorney. Second, Plaintiff argues that Defendants have failed to meet their burden of establishing that Mr. Forte was acting as the officers' attorney during the relevant communications or that Mr. Forte was acting in anticipation of litigation. Plaintiff's motion has been fully briefed and is now ripe for disposition.

## II. Discussion

Defendants have failed to meet their burden of showing that the communications sought by Plaintiff in discovery are protected by any privilege. "The essential elements for the creation and application of the attorney-client privilege are well-established: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'" *Roth v. Aon Corp.*, 254 F.R.D. 538, 540 (N.D. Ill. 2009) (quoting *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). The party asserting the privilege bears the burden of showing that it applies and has not been waived. *Rao v. Board of Trustees of the University of Illinois*, 2016 WL 6124436, at *2 (N.D. Ill. Oct. 20, 2016) (citing *Whitney v. Tallgrass Beef Co. LLC,* 2015 WL 3819373, at *2 (N.D. Ill. June 18, 2015)).

As an initial matter, Mr. Forte's communications with Fairley or Talley were not protected by the attorney-client privilege if he was acting in his capacity as a prosecuting attorney. Prosecutors represent government entities and the citizenry of those entities, not individual police officers. *See, e.g.*, *Amili v. Tukwila*, 2014 WL 3404572, at *2 (W.D. Wash. July 10, 2014); *Linetsky v. Solon*, 2016 WL 5402615, at *2 (N.D. Ohio Sept. 28, 2016).

Therefore, to the extent that Mr. Forte was acting as a prosecutor during their conversations, Fairley and Talley were not Mr. Forte's client during those communications and they would not be privileged.

The issue then turns on whether Mr. Forte was acting in his capacity as a prosecuting attorney or as a village attorney during the conversations with Talley and Fairley. As evidence, Defendants have proffered the affidavit of Mr. Forte, which claims that Mr. Forte became aware of the possibility of litigation after researching Plaintiff's previous litigation history in October 2016.[3] Talley testified that he only spoke with Mr. Forte on one occasion to prepare his testimony at the administrative hearing. (Dkt. 61-4 at 41:8-20.) The meeting with Mr. Forte took place in an anteroom outside the "chamber" that served as the courtroom for the administrative hearing, and both Talley and Fairley were present for this discussion. (Dkt. 61-4 at 41:21-42:11.) Talley testified that he recalled the substance of the conversation with Mr. Forte, but refused to answer questions about those communications on the advice of counsel at his deposition. (Dkt. 61-4 at 43:7-22.) However, Talley stated that he did not have any reason to believe that he was going to be sued by Plaintiff at the time he gave his testimony at the administrative hearing, and that he was not testifying at the hearing in anticipation of litigation. (Dkt. 61-4 at 42:12-19.) Fairley testified that he met with Mr. Forte to prepare his testimony for the administrative hearing. (Dkt. 56-1 at 31:22-32:2.) Fairley also recalls consulting Mr. Forte before serving Plaintiff with the second citation, but testified that he did not recall the substance of the conversation with Mr. Forte. (Dkt. 56-1 at 33:15-21.) Moreover, Plaintiff has appended

---

[3] Much of Defendants' brief in opposition to the motion to compel focuses on whether Mr. Forte was aware of the potential for litigation or whether his discussions were in anticipation of litigation. Such issues often come up in the context of the work product doctrine, not the attorney-client privilege. To the extent that Defendants seek to protect these communications on the basis of the work product doctrine, Federal Rule of Civil Procedure 26(b)(3) only applies to documents and tangible things, and is plainly inapplicable here.

Defendants' counsel's time records to his reply brief,[4] and they show that Mr. Forte did not bill any time related to researching Plaintiff's litigation history or meeting with Fairley or Talley to discuss the likelihood of litigation.[5]

From the Court's review of the record, the evidence strongly suggests that Mr. Forte was acting as a prosecutor relating to Plaintiff's citations and not as the attorney for the Village of Maywood or its officers during the relevant communications. The only support for Mr. Forte's version of events is a self-serving affidavit that claims that he became aware of the possibility of litigation because Plaintiff had filed a similar suit (without explaining how or why the suit was similar) against the City of Chicago, and that as a result, his conversations with Fairley and Talley were in his role as attorney for the Village of Maywood. Meanwhile, the testimony of Talley and Fairley both point towards Mr. Forte acting as a prosecutor. In particular, the fact that Talley testified that he recalled the substance of his pre-hearing conversation with Mr. Forte, but was not aware of any pending litigation at the time he testified at the administrative hearing strongly indicates that the relevant communications were not about any potentially pending litigation, but were more likely to be preparation for the upcoming administrative hearing, which would squarely fall within Mr. Forte's role as a prosecutor. Moreover, one of the relevant communications took place shortly before the administrative hearing in an anteroom outside the courtroom with Mr. Forte, Talley, and Fairley all present, which is also indicative of the Mr. Forte acting in his role as a prosecutor, just as a matter of common sense. Additionally, the

---

[4] Because counsel's bills are paid by a public entity (*i.e.*, the Village of Maywood), they are publicly available.
[5] Plaintiff suggests that this conclusively demonstrates that Mr. Forte was acting as a prosecutor during said meetings. However, the records also show that Mr. Forte billed the Village of Maywood for time spent prosecuting traffic and local ordinance cases. (*See, e.g.*, Dkt. 61-1 at 61-63.) The Court is at a loss for why Mr. Forte would not have billed the time he spent working on Plaintiff's case between October 2016 and January 2017 (as either a prosecutor or as the attorney for the Village of Maywood). All parties seemingly concede that Mr. Forte did, in fact, meet with Fairley and Talley to discuss something related to Plaintiff's citations, so it appears that the time should have been entered into Mr. Forte's time records. Regardless, it is Defendants' burden to show the attorney-client privilege applies, and Mr. Forte's purported rationale for his role as attorney for Village of Maywood during the relevant communications is not supported by the contemporaneous time records that Mr. Forte's firm submitted to the Village of Maywood.

contemporaneous records, such as billing records and Village of Maywood meeting agendas, do not show any evidence that Mr. Forte provided any legal advice in anticipation of litigation, or that Defendants were aware of any potential litigation from Plaintiff.  Because the evidence suggests that Mr. Forte was acting in his role of prosecutor during his conversations with Talley and Fairley, Defendants have failed to meet their burden of proving that those individuals were his clients, and the communications are not protected by the attorney-client privilege.  Plaintiff's motion to compel is granted, and Fairley and Talley must be presented for continued depositions to answer questions related to the substance of these conversations.

## III.    Conclusion

For the reasons discussed above, Plaintiff's Motion to Compel [56] is granted.  The Court sets the new fact discovery deadline in this case of February 9, 2018.  Status hearing set for 2/14/2018 at 9:30 a.m. remains.


**ENTERED: 1/19/18**



_____

**U.S. Magistrate Judge, Susan E. Cox**